## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|                                        |   |                        |
|----------------------------------------|---|------------------------|
| **SECURITIES AND EXCHANGE**            | : |                        |
| **COMMISSION,**                        | : |                        |
|                                        | : | **CIVIL ACTION NO.**   |
| **Plaintiff**                          | : | **1:09-CV-01780-AJB**  |
|                                        | : |                        |
| **v.**                                 | : |                        |
|                                        | : |                        |
| **MICHAEL T. RAND,**                   | : |                        |
|                                        | : |                        |
| **Defendant.**                         | : |                        |

## O R D E R   A N D   O P I N I O N[1]

This matter is before the Court on Plaintiff Security and Exchange Commission's motion for summary judgment, [Doc. 164]. Defendant Michael T. Rand, appearing pro se, has filed a response in opposition to the motion, and Plaintiff and Defendant have filed a reply and sur-reply, respectively. [Docs. 166, 170, 172, 174]. After the summary judgment motion was submitted by the Clerk to the Court, on February 13, 2019, Defendant filed a motion for leave to file a supplemental response brief, [Doc. 178], and the Court directed Plaintiff to file a response, [Doc. 179], which it

---

[1]     The parties consented to magistrate judge jurisdiction. [Docs. 6, 11; Dkt. Entry dated 9/9/2009]. As such, this Order constitutes a final order under 28 U.S.C. § 636(c).

did. [Doc. 181].[2]  Plaintiff filed a reply.  [Doc. 182].  The matters are therefore ripe for adjudication.

For the following reasons, Plaintiff's motion for summary judgement, [Doc. 164], **GRANTED**, and Defendant's motion for leave to file a supplemental response brief, [Doc. 178], is **DENIED**.

---

[2]      In its opposition to Defendant's motion to file a supplemental or another sur-reply brief, Plaintiff points out that sur-replies are not favored and are allowed only where the opposing party has raised a new issue in a reply brief or the party is seeking to alert the court to a new decision or rule that implicates the motion under review.  [Doc. 181 at 1-2].  Plaintiff is correct in its assertion that neither the Federal Rules of Civil Procedure nor this Court's local rules allow the filing of surreplies. *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). The court can, in its discretion, allow a party to file a surreply.  *Id.*  However, "this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Id.*  As has been previously warned, "[t]o allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Garrison v. Northeast Georgia Medical Center, Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999) (O'Kelley, J.).

Although the Court agrees with Plaintiff on this argument, the Court is not denying Defendant's motion on this ground, but rather, as will be seen, because the materials that Defendant seeks to present to the Court in a supplemental or surreply brief are ineffective in Defendant's effort to avoid the collateral estoppel effects in this litigation of his criminal conviction.

## I.    Background

This is a civil action alleging that Defendant violated several federal securities laws via a fraudulent accounting scheme.  The alleged misconduct occurred from 2000 to 2007 while Defendant was working as the corporate controller and later the chief financial officer at Beazer Homes USA, Inc. ("Beazer")—an Atlanta-based home building company that is publicly traded.  Defendant was also charged in a criminal action related to the same alleged misconduct, which resulted in a jury verdict against Defendant.  Plaintiff now seeks judgment in its favor based on the issues decided at the defendant's criminal trial.  Thus, the Court will provide the relevant background for both this civil action and the criminal action.[3]

### A.    Allegations in the Civil Complaint

Plaintiff filed this action in 2009.   [Doc. 1].   The complaint alleges that Defendant violated and aided and abetted Beazer's violations of the federal securities laws by manipulating Beazer's reported quarterly and annual earnings.  As alleged in the complaint, Defendant improperly recorded the company's home building reserves.  This allowed Defendant to fraudulently decrease Beazer's reported net income from

---

[3]     This case was stayed from 2012 to 2017 pending Defendant's criminal trial(s) in the Western district of North Carolina and exhaustion of his appellate rights.  [Docs. 131, 140].

2000 to 2005.  Defendant then fraudulently inflated Beazer's income in 2006 using the reserves to offset Beazer's declining performance.  In other words, the complaint alleges that Defendant would fraudulently increase or decrease Beazer's earnings per share to meet or exceed analysts' expectations and company targets.  [Doc. 1 at 2].

The complaint also alleges that Defendant intentionally recorded recognized revenue on sale-leaseback transactions despite knowing that the transactions did not qualify for that accounting treatment.  Under the sale-leaseback transactions, Beazer would sell model homes to investors and then rent the homes back from the investors until the subdivision was complete and the model home could be sold to a third party. The transactions also allowed Beazer to share in the appreciation of the model homes under side agreements with the investors.  Thus, Beazer retained an interest in the homes.  The complaint alleges that Beazer's auditor, Deloitte, and internal accountants advised Defendant that Beazer could not recognize revenue from those types of transactions under GAAP.[4]  They advised that sale-leaseback transactions should be recorded as financing transaction with no revenue recognition if the terms included a continuing interest for Beazer.  [*Id.* at 16-17].

---

[4]      GAAP (generally accepted accounting principles) is a collection of commonly-followed accountings rules and standards for financial reporting.

4

According to the complaint, Defendant dealt with this advice by lying to Deloitte and Beazer's internal accountants about the terms of the transactions.  [*Id.* at 17]. Defendant provided them with versions of the sale-leaseback agreements that did not include or reference Beazer's continuing interest, and he kept the side agreements that contained those terms from them.  He also directly told them that Beazer would not have an interest in the leased assets.  [*Id.*].

The complaint also alleges that Defendant's misconduct caused Beazer to misstate its earnings in the company's various Form 10-Ks (annual reports), Form 10-Qs (quarterly reports), and Form 8-Ks (unscheduled reports of material events) that it filed with the Securities and Exchange Commission ("SEC").  [*Id.* at 18-27].

In total, the complaint alleges claims for:

(1) securities fraud, in violation of Sections 17(a)(1), (2), and (3) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (Counts I to III);

(2) aiding and abetting Beazer's violations of the certain reporting provisions of the federal securities laws, specifically, Section 13(a) of the Exchange Act and Rule 12b-20, 13a-1, and 13a-13 thereunder (Count IV);

5

(3)  aiding and abetting Beazer's violations of the books and records and internal control provisions of the federal securities laws, specifically, Section 13(b)(2)(A), 13(b)(2)(B), and Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder (Counts V to VI); and,

(4) lying to accountants, in violation of Rule 13b2-2 promulgated under the Exchange Act (Count VII).

## B.    The Criminal Action

In 2010, the Government charged Defendant criminally in the Western District of North Carolina for the same misconduct alleged in the complaint.  *See United States v. Rand*, 835 F.3d 451, 456-59 (4th Cir. 2016) (detailing the criminal allegations against the defendant, including improper accounting of reserves, improper revenue recognition on sale-leaseback transactions, and lying to accountants and auditors).  The eleven-count indictment included charges for securities fraud and conspiracy to commit securities fraud.  [Doc. 164-5].

Defendant went to trial twice.  At the first trial, Defendant was convicted on seven counts in the indictment and acquitted on four.  But a new trial was later granted based on juror misconduct.  *See Rand*, 835 F.3d at 458.

AO 72A
(Rev.8/8
2)

Before the second criminal trial, the Government dismissed several of the charges, including the direct securities fraud count.  It continued to pursue conspiracy charges, which included conspiracy to commit securities fraud.  Among other things,[5] the jury found Defendant guilty of conspiracy to commit several violations of the federal securities laws.   Specifically, the jury found that the "object[s] of the conspiracy" were to: (1) commit securities fraud; (2) make false or misleading statements to auditors or accountants; (3) circumvent Beazer's internal accounting controls; and (4) falsify book, records, and accounts of Beazer.   Verdict Form [Doc. 164-7].

The jury was required to find that Defendant committed each of these acts for them to qualify as an "object of the conspiracy."   Jury Instructions, JA 3050-56 [Doc. 164-6].  For instance, the jury had to find that Defendant committed securities fraud for that act to be an object of the conspiracy.  *Id.* at JA 3050-51.  The jury found that he did.   Defendant then appealed to the Fourth Circuit, which affirmed his conviction, *Rand*, 835 F.3d 451, and the Supreme Court denied his petition for certiorari.  *Rand v. United States*, 137 S. Ct. 525 (U.S.S.C. 2016).  Defendant has also

---

[5]      The jury also found the defendant guilty of conspiracy to commit wire fraud, impairing or attempting to impair a grand jury investigation, misleading conduct, and obstruction of an official investigation.  Verdict Form [Doc. 164-7].

7

filed a § 2255 motion in the Western District of North Carolina, which remains pending.   *See Michael T. Rand v. United States*, No. 3:17-cv-00687-RJC (W.D.N.C. filed Nov. 28, 2017).

Plaintiff now moves for summary judgment based on collateral estoppel, arguing that the jury in the criminal case already found that Defendant committed the misconduct alleged in the complaint.  Defendant opposes.

## II.    Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).   The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the party

8

opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

At summary judgment, it is not the Court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that are disputed in good faith but are not material to the case will not preclude summary judgment, *id.*, and "genuine" issues of material fact must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Id.* at 587 (citations omitted). Conversely, when the evidence could reasonably result in a verdict for the nonmovant, a genuine dispute exists and summary judgment is improper. *Anderson*, 477 U.S. at 247.

AO 72A
(Rev.8/8
2)

## III.    Discussion

Plaintiff seeks summary judgment based on collateral estoppel.  Under this doctrine, Plaintiff argues that it is entitled to summary judgment because the issues necessary to establish its claims were already decided at the criminal trial.

Collateral estoppel—also called "issue preclusion"—prevents parties from relitigating issues that were already decided in a previous action. *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998); *see also Martinez v. Mkt. Traders Inst., Inc.*, No. 17-11956, 2018 WL 6431534, at *2 (11th Cir. Dec. 6, 2018) ("Issue preclusion—or "collateral estoppel"—precludes a litigant from relitigating an issue that was actually litigated in an earlier action to a final judgment between the same parties, provided that the issue in both proceedings is in fact the same.") (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015)).  The doctrine applies to issues previously litigated in both civil and criminal matters.  *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005) ("Collateral estoppel bars a defendant who is convicted in a criminal trial from contesting this conviction in a subsequent civil action with respect to issues necessarily decided in the criminal trial.").  Thus, "prior criminal convictions may work an estoppel in favor of the government in subsequent civil proceedings."  *Emich Motors Corp. v. General Motors Corp.*,

10

340 U.S. 558, 568-69 (1951); *S.E.C. v. Bilzerian*, 153 F.3d 1278, 1282-83 (11th Cir. 1998) (finding that a defendant convicted of securities fraud was collaterally estopped from contesting previously litigated issues in a later civil action brought by the Securities and Exchange Commission); *In re Raiford*, 695 F.2d 521, 524 (11th Cir. 1983) (holding that a prior criminal bankruptcy conviction collaterally estopped debtor from relitigating the issues in a later civil proceeding under a separate statute); *Refined Sugars, Inc. v. S. Commodity Corp.*, 709 F. Supp. 1117, 1122 (S.D. Fla. 1988) (granting plaintiff's motion for summary judgment as to fraud and theft in a civil action due to defendant's prior criminal conviction resulting from the same fraudulent scheme).

The party relying on collateral estoppel must show that the following four elements are met: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue determined was a critical and necessary part of the judgment in the prior action; and (4) the non-moving party had a full and fair opportunity to litigate the issue in the prior proceeding.  *Pleming*, 142 F.3d at 1359; *see also CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (same).  The Court finds that each of the required elements are met.

11

### A.    The Issues at Stake are Identical

For the first element, Defendant argues that the issues are not identical because the jury convicted him of conspiracy to commit securities fraud rather than a direct securities fraud charge.  However, courts in this circuit and others have found that a criminal conspiracy conviction is preclusive when committing the underlying act was a necessary element to the verdict—including in the context of securities fraud.  *S.E.C. v. Langford*, No. 2:08-cv-761-AKK, 2011 WL 13228240, at *5 (N.D. Ala. Aug. 8, 2011) (finding collateral estoppel applied to civil securities fraud counts based on criminal conviction of conspiracy to commit bribery, mail fraud and wire fraud); *S.E.C. v. Curshen*, No. 1:11-CV-20561, 2012 WL 1981878, at *2 (S.D. Fla. June 1, 2012) (finding collateral estoppel applied to civil securities fraud claim when the defendant was convicted of conspiracy to commit securities fraud based on the same alleged misconduct); *see also S.E.C. v. Bravata*, 3 F. Supp. 3d 638, 657 (E.D. Mich. 2014) ("Convictions for mail fraud, wire fraud, securities fraud, and conspiracy to commit securities fraud suffice to establish claims for securities fraud based on the same facts in a related civil action." (citing cases)).

In line with those decisions, and after reviewing the record in both cases against Defendant, including the civil complaint, the criminal indictment, the jury instructions,

12

and the jury verdict, the Court finds that the issues at stake are identical.  This is true for Plaintiff's claims for securities fraud, aiding and abetting Beazer's securities violations, and lying to Beazer's auditors and accountants.  Each of these claims are based on the same allegations at issue in the criminal indictment.  In addition, the elements of the claims were decided in the criminal action.

Turning first to securities fraud, that claim requires evidence that Defendant made "(1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." *S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007).[6]  This is exactly what the jury was required to find in the criminal case.  The jury was charged that, in order to find a conspiracy to commit securities fraud, the Government had to prove beyond a reasonable doubt that:

> One, defendant knowingly either: (A) employed any device, scheme, or
> artifice to defraud as detailed in count one of the indictment; or (B) made
> any untrue statement of a material fact, or omitted to state a material fact

---

[6]    Plaintiff brings securities fraud claims under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 17(a)(1), (2), and (3) of the Securities Act. The standard outlined here is for securities fraud under Section 10(b) and Rule 10b-5 thereunder, which is virtually identical to the standard for a fraud claim brought under Section 17(a)(1). *Merch. Capital, LLC*, 483 F.3d at 766.  It is also the same for claims brought under Sections 17(a)(2) and 17(a)(3), except that those claims merely require a negligent representation or omission rather than scienter. *Id*.

13

necessary in order to make the statements made in light of the circumstances under which they were made, not misleading as detailed in the indictment; or (C) engaged in a transaction, practice, or course of business which operated or would operate as a fraud and deceit on any person as detailed in count one of the indictment; and

Two, that the defendant did so in connection with the purchase or sale of the securities described in count one of the indictment; namely, Beazer stock; and

Three, that in connection with this purchase or sale, the defendant made use of or caused another to use any means or instrumentality of interstate commerce; and

Four, that the defendant acted with the intent to defraud.

Jury Instructions, JA 3050-51 [Doc. 164-6].

As to the aiding and abetting claims, Plaintiff must show "(1) a primary violation of the securities law; (2) [that] the aider and abettor must have knowledge of the primary violation; and (3) [that] the aider and abettor must provide substantial assistance in the commission of the primary violation." *S.E.C. v. Goble*, 682 F.3d 934 (11th Cir. 2012).

Plaintiff alleges that Defendant helped Beazer violate the reporting provisions of the federal securities laws, including Section 13(a) and Rule 12b-20, 13a-1, and 13a-13 thereunder.  These provisions generally require Beazer to file periodic reports that are not misleading.  Next, Plaintiff alleges that Defendant aided and abetted Beazer's

14

violations of Section 13(b)(2)(A) of the Exchange Act and Rule 13b2-1.  Generally, these provisions required Beazer to reasonably maintain accurate accounting books and records.  Plaintiff also alleges that Defendant helped Beazer violate Section 13(b)(2)(B) of the Exchange Act, which required Beazer to set up reasonable internal accounting controls, and Section 13(b)(5), which prohibits knowingly circumventing or failing to implement a system of internal accounting controls or knowingly falsifying accounting records.

These issues were determined in the criminal action.  For example, the jury found that Defendant "willfully and knowingly falsified, or caused to be falsified" Beazer's books, records, and accounts as part of his conspiracy with Beazer.  Jury Instructions, JA 3055 [Doc. 164-6].  It also found, among other things, that Defendant knowingly and willfully "circumvented or caused others to circumvent Beazer's system of internal controls."  *Id.* at JA 3054-55.  Thus, the record shows that the same issues are at stake for the aiding and abetting claims.

For the final claim of the complaint, Plaintiff alleges that Defendant violated Rule 13b2-2 promulgated under the Exchange Act, which prohibits a company's officer from lying to auditors or accountants in connection with an SEC filing.  In the criminal case, the jury found that one object of the conspiracy was "to make false or misleading

AO 72A
(Rev.8/8
2)

statements to auditors and accountants." Jury Verdict [Doc. 164-7]. This required the jury to find that Defendant knowingly made false statements or omissions to "an auditor or accountant in connection with the preparation of financial statements that Beazer was required to file with the Securities and Exchange Commission." Jury Instructions, JA 3053 [Doc. 164-6].

Accordingly, the Court finds that the issues decided in the criminal case are identical to those presented by the allegations in the complaint for purposes of collateral estoppel.

### B.    The Remaining Elements for Collateral Estoppel

The remaining elements for collateral estoppel are also met. The issues were actually litigated, and were a critical and necessary part of the conviction. Indeed, the jury was required to find at least one of the objects of the conspiracy on the verdict form to find against Defendant on the criminal conspiracy count. The jury was also required to find that Defendant committed each act to include them as an object of the conspiracy on the verdict form. The Court further notes that Defendant does not appear to dispute these two elements.

Finally, Defendant had a full and fair opportunity to litigate the issues at the criminal action. The case was tried to a verdict and the judgment was affirmed on

appeal.  However, Defendant argues that he was deprived of a full and fair opportunity to litigate.  First, he seems to argue that the judgment against him is not final, and therefore the issues were not fully litigated.  He points to his previous, unsuccessful direct appeal of the conviction to the Fourth Circuit–for which the Supreme Court denied certiorari—and his pending § 2255 motion in the Western District of North Carolina, Case No. 3:17-cv-687-RJC.  But an unsuccessful appeal does not remove the prior conviction's preclusive effect.  *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988).  Nor does a pending § 2255 motion.  *S.E.C. v. Durham*, No. 111CV00370JMSTAB, 2017 WL 3581640, at *6 (S.D. Ind. Aug. 18, 2017) ("[The defendant] fails to cite, and this Court is unaware of, any contrary cases holding that a pending § 2255 [m]otion provides this Court with grounds to abstain from applying issue preclusion.").

This conclusion is not undermined by Defendant's motion for leave to file a supplemental brief.  [Doc. 178].  In this motion, Defendant argues that he recently discovered evidence in January 2019 that casts a "negative light on the reliability of" the allegations in the complaint and the criminal case, and seeks to file a supplemental brief to address these matters.  [*Id.* at 1-9].  His allegations "are exactly the type of effort to relitigate a criminal conviction that collateral estoppel is intended to bar."

AO 72A
(Rev.8/8
2)

*S.E.C. v. Afriyie*, No. 16-CV-2777 (JSR), 2018 WL 6991097, at *4 (S.D.N.Y. Nov. 26, 2018).   Defendant's conviction was final upon the entry of judgment following his sentence.  *United States v. Pelaez*, 196 F.3d 1203, 1205 (11th Cir. 1999).  As of today, it has been affirmed on appeal and not set aside via a motion to vacate.  As a result, it is entitled to preclusive effect in this litigation, and Defendant is not entitled to challenge his conviction in this proceeding.  *See also S.E.C. v. Quinlan*, No. 02-60082, 2008 WL 4852904, *5 (E.D. Mich. Nov. 7, 2008) (preclusive effect of criminal conviction not affected by defendant's motion to withdraw guilty plea); *S.E.C. v. Resnick*, Civil No. CCB-05-1254, 2008 WL 2346021, *2 (D. Md. June 3, 2008) (collateral estoppel applies even though defendant's sentence stayed pending appeal).  Moreover, discovery has long since closed and Defendant may not re-open discovery in response to a summary judgment motion, since even reopening discovery does not alter the preclusive effect of his prior conviction.  Accordingly, Defendant's motion for leave to file a supplemental brief (and/or to reopen discovery), [Doc. 178], is **DENIED**.

The remainder of Defendant's arguments against this element of collateral estoppel are generally attacks on the sufficiency of the evidence against him at the criminal trial and the effectiveness of his counsel in the case.  *See* Defendant's Resp.

18

Br. at 11-16 [Doc. 166]. In essence, Defendant mostly seeks to relitigate the factual and legal issues decided at his criminal trial, which is precisely what collateral estoppel serves to prevent. *Pleming*, 142 F.3d at 1359 ("[C]ollateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding."). And as noted above, Defendant's attacks on his criminal conviction do not alter its preclusive effect. *Curshen*, 2012 WL 1981878, at *2 ("Th[e] conclusive effect of a criminal conviction is not suspended by an appeal." (listing cases)); *Durham*, 2017 WL 3581640, at *6. *Cf. Lunt v. Gaylor*, 2005 DNH 114, 2005 WL 1868480, at *4 (D.N.H. Aug. 4, 2005) (noting that courts have determined that it would be injurious to allow defendants to use habeas corpus as a tool to bar collateral estoppel).

Therefore, because these issues have already been litigated, the Court finds that Defendant is collaterally estopped from relitigating those same facts and issues in this action. Accordingly, Plaintiff's Motion for Summary Judgment on based on the doctrine of collateral estoppel, [Doc. 164], is **GRANTED**.

## IV.    Relief

As relief, Plaintiff seeks a permanent injunction against Defendant, an order awarding disgorgement of ill-gotten gains, a civil monetary penalty, and an officer and director bar against Defendant.

19

### A.    Permanent Injunctive Relief

Plaintiff seeks a permanent injunction against Defendant from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 thereunder, and from aiding and abetting violations of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, Section 13(a) of the Exchange Act, and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder.

"The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004). The Court finds that the first element has been met. For the second element, courts consider "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *S.E.C. v. Ginsburg*, 362 F.3d 1292, 1304 (11th Cir. 2004).

The Court finds that Defendant's conduct was egregious. He engaged in a scheme that spanned several years and involved several different acts. He improperly

AO 72A
(Rev.8/8
2)

accounted for Beazer's reserves, improperly recognized revenue on certain transactions, and lied to auditors and accountants about it.  He also did so willfully.  Meanwhile, Defendant provides no assurances that he will not commit future violations and continues to assert that his conduct was not inappropriate.  "[A]lthough [Defendant] is currently serving a prison sentence for his crimes and thus not able to re-offend in the near future, this court finds that the egregiousness and repetitive nature of [his] conduct justifies the injunction."  *S.E.C. v. Langford*, No. 2:08-CV-761-AKK, 2011 WL 13228240, at *5 (N.D. Ala. Aug. 8, 2011) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)).

Accordingly, Defendant is **PERMANENTLY ENJOINED** from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 thereunder, and from aiding and abetting violations of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, Section 13(a) of the Exchange Act, and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder.

### B.    Disgorgement

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains.  The burden then shifts to the defendant

AO 72A
(Rev.8/8
2)

to demonstrate that the SEC's estimate is not a reasonable approximation." *Calvo*, 378 F.3d at 1217. "[S]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (quoting *S.E.C. v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998)).

The Court may also award prejudgment interest on the ill-gotten gains. *S.E.C. v. Merch. Capital, LLC*, 486 Fed. Appx. 93, 97 (11th Cir. Aug. 7, 2012). Awarding prejudgment interest prevents the wrongdoer from benefitting from what in effect amounts to interest-free loans of the ill-gotten funds. *Id.* (citing *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996).

Plaintiff has alleged that Defendant received bonuses totaling to $2,847,725 by meeting Beazer's earnings per share targets, which he accomplished via the fraud scheme. Defendant appears not to dispute this amount, except to say that "[his] and others['] cumulative compensation would have been higher." Resp. to Statement of Material Facts at 16 [Doc. 167]. He also does not dispute that the prejudgment interest on that amount is $1,103,565.68. *Id.* at 17. Plaintiff calculated this figure based on "the rate for delinquent federal tax debts established by the Internal Revenue Service, IRC § 6621(a)(2), and assessed on a quarterly basis," from July 1, 2009 (when the complaint was filed) to July 1, 2018 (just before the summary judgment motion was

22

filed).  Summary Judgment Motion at 21 [Doc. 164].  The Court finds both amounts are reasonable.

Therefore, the Court finds that Defendant is liable for these amounts: $2,847,725 for disgorgement of ill-gotten gains, and $1,103,565.68 in prejudgment interest.

**C.    Civil Monetary Penalty**

Section 20(d)(2) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize the Court to impose civil penalties against any person or entity who has violated those federal securities laws.   Under those provisions, if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," then the Court may impose a civil penalty equal to "the gross amount of pecuniary gain to such defendant as a result of the violation."  15 U.S.C. § 77t(d)(2), 15 U.S.C. § 78u(d)(3).

Here, the evidence has established that Defendant committed securities fraud, and that Defendant resultantly gained $2,847,725 in bonuses (the same amount as the disgorgement).  Defendant does not appear to contest this amount in responding to Plaintiff's motion.  Therefore, the Court finds that Defendant is liable for $2,847,725 in civil penalties for his violations of the federal securities laws.

23

### D.    Officer and Director Bar

Plaintiff also asks the Court to bar Defendant from serving as an officer or director of a public company.  Section 21(d)(2) of the Exchange Act authorizes the Court to bar a person from serving as an officer or director of any issuer "if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer." Courts have used the following non-exhaustive factors in determining "unfitness":

> (1) the nature and complexity of the scheme; (2) the defendant's role in the scheme; (3) the use of corporate resources in executing the scheme; (4) the defendant's financial gain (or loss avoidance) from the scheme; (5) the loss to investors and others as a result of the scheme; (6) whether the scheme represents an isolated occurrence or a pattern of misconduct; (7) the defendant's use of stealth and concealment; (8) the defendant's history of business and related misconduct; and (9) the defendant's acknowledgment of wrongdoing and the credibility of his contrition.

*S.E.C. v. Levine*, 517 F. Supp. 2d 121, 145 (D.D.C. 2007); *see also S.E.C. v. Miller*, 744 F. Supp. 2d 1325, 1347-48 (N.D. Ga. 2010) (Carnes, J.) (discussing differences between pre-Sarbanes-Oxley "substantial unfitness" test and post-Sarbanes-Oxley "unfitness" test).

Here, Defendant used complex accounting methods for the fraud scheme and played a major role in doing so.  He also used Beazer's resources to do commit the fraud repeatedly over the course of several years, benefitted financially from the scheme, and affirmatively lied to auditors and accountants to keep his misconduct

24

under wraps.  Under similar circumstances to this case, courts have found that the officers and directors bar was warranted.  *S.E.C. v. Apuzzo*, 184 F. Supp. 3d 1, 10 (D. Conn. 2016) (finding officers and directors bar warranted against a chief financial officer who aided and abetted a fraudulent accounting scheme involving improper revenue recognition of sale-leaseback transactions and prematurely recognizing revenue to inflate profits, and took affirmative steps to conceal the fraud).

Thus, the Court finds that the officers and directors bar is appropriate in this case. Defendant is hereby **BARRED** from serving as an officer or director of a public company.

## V.      Conclusion

Accordingly, Plaintiff's Motion for Summary Judgment, [Doc. 164], is **GRANTED**.  Defendant is hereby **PERMANENTLY ENJOINED** from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 thereunder, and from aiding and abetting violations of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, Section 13(a) of the Exchange Act, and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder.

In addition, Defendant is liable for the following amounts:

25

(1) $2,847,725 in disgorgement for ill-gotten gains;

(2) $1,103,565.68 in prejudgment interest; and

(3) $2,847,725 in civil penalties.

Finally, under Section 21(d)(2) of the Exchange Act, the defendant is also **BARRED** from serving as an officer or director of a public company.

Defendant's motion for leave to file a supplemental brief, [Doc. 178], is **DENIED**.

The Clerk is **DIRECTED** to enter judgment for Plaintiff.

**IT IS SO ORDERED and DIRECTED**, this  30th  day of March, 2019.


ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)